UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

USA,

Plaintiff,

v.

WILL-DARNALL,

Defendant.

Case No. 24-cr-00292-PCP-1

**ORDER GRANTING MOTION TO DISMISS THIRD-PARTY CLAIMANT SANDRA WILL'S AMENDED PETITION**

Re: Dkt. Nos. 104, 115

Cassie Will-Darnall pleaded guilty to bank and wire fraud and did not dispute the government's forfeiture allegations. Third-party claimant Sandra Will brought this ancillary proceeding seeking an order that she holds a superior interest not subject to forfeiture in Ms. Will-Darnall's property at 111 Belwood Gateway in Los Gatos, California. She also contends that forfeiture of her asserted interest in the home would violate the Eighth Amendment.[1] For the reasons below, the Court denies her petition and grants the United States's motion to dismiss.

**BACKGROUND**

This proceeding stems from Cassie Will-Darnall's underlying conviction for bank and wire fraud. During the COVID-19 pandemic, on May 20, 2020, Ms. Will-Darnall submitted two loan applications pursuant to the federal government's Paycheck Protection Program and Economic Injury Disaster Loan program and received proceeds amounting to $2,833,554. The United States subsequently charged Ms. Will-Darnall with one count of bank fraud, 18 U.S.C. § 1344(2), and one count of wire fraud, *id.* § 1343, for submitting fraudulent loan applications. Amended Petition,

[1] Ms. Will's original petition sought to determine her interests in the 111 Belwood Gateway property as well as a second property. Dkt. No. 65. The United States withdrew its request for forfeiture of that property and moved to dismiss Ms. Will's original petition. The Court granted the request with leave for Ms. Will to amend her petition to challenge the forfeiture of the Belwood property "only if she can demonstrate that her interest in the Belwood property is superior to that of her daughter." Dkt. No. 103.

United States District Court
Northern District of California

Dkt. No. 104, at 3–4. The United States's Information also included forfeiture allegations for the 111 Belwood Gateway property. Information, Dkt. No. 1, at 9. Will-Darnall pleaded guilty to both counts. Dkt. No. 35.

Third-party claimant Sandra Will is Cassie Will-Darnall's mother. In 2012, then-Cassie Will married Sheri Darnall. Dkt. No. 104-1, Will Decl. ¶ 11. The following year, two deeds of trust for 111 Belwood Gateway listed both Cassie Will-Darnall and Sheri Darnall as the borrowers on that property. Amended Petition at 3; Dkt. 104-4, Exh. B at 1273–74. Cassie Will-Darnall has lived in the 111 Belwood Gateway home since 2012. *See* Amended Petition at 4; Will Decl. ¶ 23. Cassie Will-Darnall filed for divorce in 2016 and bought out Sheri Darnall's share of the home in 2017. Dkt. No. 104-6, Exh. D at 1662–63, 1666. Sandra Will helped Cassie Will-Darnall buy out Sheri Darnall's share of the property by taking approximately $500,000 out of a home equity line of credit from Bank of America secured by Sandra Will's own house on Almaden Way. Dkt. No. 104-1, Will Decl. ¶ 15. Ms. Will gave Cassie Will-Darnall $400,000 of that money along with $150,000 from Ms. Will's cash savings. *Id.* ¶¶ 15, 16.

In 2018, Sandra Will took out a $1 million loan, again from Bank of America and again secured by her Almaden house. *Id.* ¶ 18. The loan was first used to pay off her prior home equity line of credit and another loan, then the remaining cash, $348,114.69, and other money from Will's savings were used to pay off the mortgage on the 111 Belwood Gateway property. Amended Petition at 3–4; Will Decl. ¶ 19. After 2018, Cassie Will-Darnall continued to live in the 111 Belwood Gateway property and made monthly payments by check to her mother throughout 2019 and 2020, with the memo lines most months indicating that they were for a mortgage.

The government alleged that Cassie Will-Darnall, after fraudulently obtaining federal funds during the COVID-19 pandemic, used the money to pay off Sandra Will's loan to Will-Darnall for the 111 Belwood Gateway property. *See also* Will Decl. ¶ 24. On June 15, 2020, Ms. Will-Darnall wrote Ms. Will a check for $971,504.21, which Ms. Will deposited and used to repay Bank of America. Amended Petition at 6. On June 20, 2020, Ms. Will-Darnall signed a quitclaim deed transferring title to the Belwood property to Ms. Will. Dkt. No. 44-29, Exh. CC. Below Ms. Will-Darnall's signature, someone handwrote, "Trustee of the Will-Darnall Trust." *Id.*

United States District Court
Northern District of California

The United States seeks to forfeit the $746,372.98 in fraudulent proceeds Ms. Will-Darnall put into the Belwood property, and to use Ms. Will-Darnall's interest in the Belwood property to satisfy the $1,406,594.56 money judgment. Dkt. No. 115, Motion to Dismiss at 3. Ms. Will argues that she is the beneficiary of a resulting trust on the Belwood property and consequently had an interest superior to that of Ms. Will-Darnall at the time of Ms. Will-Darnall's actions, such that forfeiture of the Belwood property would be improper.

The United States now moves to dismiss Ms. Will's amended petition and for the Court to enter a final order of forfeiture granting the government:

1. Up to $746,372.98 in equity resulting from the sale of the 111 Belwood Gateway property
2. A money judgment of $1,406,594.56 from Ms. Will-Darnall
3. All funds up to $625,952.60 on deposit in a Vanguard account ending in 6846, and all interest accrued since seizure of those funds

Ms. Will challenges only the requested forfeiture of the 111 Belwood Gateway property. Dkt. No. 104.

## LEGAL STANDARDS

18 U.S.C. § 981(a)(1)(C) makes subject to forfeiture any property "which constitutes or is derived from proceeds traceable to a violation of," among other offenses, bank fraud under 18 U.S.C. § 1344(2). Congress extended the forfeiture statute to criminal proceedings in 28 U.S.C. § 2461(c).

21 U.S.C. § 853(p) requires the Court to "order the forfeiture of any other property of the defendant" if the defendant cannot satisfy their forfeiture obligation. *See United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019). But third parties can "petition the court for a hearing to adjudicate the validity of [their] alleged interest in the property." 21 U.S.C. § 853(n)(2). "If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that" the third-party petitioner has a legal entitlement "superior to any … of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section," then "the court shall amend the order of forfeiture in accordance with

its determination." 21 U.S.C. § 853(n)(6).

## ANALYSIS

The United States argues that Ms. Will's new argument is untimely, that she has not shown that she held a beneficial interest in 111 Belwood Gateway, and that she cannot claim an Eighth Amendment violation arising from forfeiture of a property in which she has no interest.

### I. Timeliness

The United States first argues that Ms. Will's petition is untimely because she asserted her resulting trust theory for the first time in her amended complaint. Motion to Dismiss at 6. 21 U.S.C. § 853(n)(2) requires third parties "asserting a legal interest in property which has been ordered forfeited" to petition the court "within thirty days of the final publication of notice." The United States does not argue that Will's petition itself is untimely, only that she cannot raise a new legal theory as to her interest in the Belwood property outside of the statutory deadline. Motion to Dismiss at 6–7.

It is clear that Will's amended petition would be timely under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 15(c) permits an amended claim to "relate back" to a timely filed one when the amended claim alleges "a single course or pattern of conduct—not factually and temporally unrelated conduct arising out of the same underlying proceeding." *Walden v. Shinn*, 990 F.3d 1183, 1202 (9th Cir. 2021) (quoting *Ross v. Williams*, 950 F.3d 1160, 1171 (9th Cir. 2020) (en banc)). Here, Ms. Will's amended petition alleges essentially the same "course or pattern of conduct" as her original petition: that Will had a superior interest in the Belwood property before and at the time of Ms. Will-Darnall's fraudulent activities. Ms. Will's amended petition alleges the same facts and merely raises a new legal theory premised on those facts, and the Court expressly granted Ms. Will leave to amend.

At the same time, 28 U.S.C. § 853(n)(3) requires that the petition "set forth the nature and extent of the petitioner's right, title, or interest in the property." In the United States's view, this requires that the petition not only set forth the facts justifying relief but also the legal theory under which those facts create a superior interest. In support of its theory, the United States relies upon an unpublished Ninth Circuit decision addressing the distinct but tangentially related issue of

United States District Court
Northern District of California

whether a district court abused its discretion by denying leave to amend a petition to assert new *facts* that were previously available to the petitioner. *See United States v. Welch*, No. 23-3309, 2024 WL 4879474 (9th Cir. Nov. 25, 2024).

Because Ms. Will's petition must be denied on the merits, the Court need not resolve the parties' dispute as to the timeliness of her amended petition. Instead, the Court will assume its timeliness and address its merits.

## II. Ms. Will has not pleaded facts establishing that she held a beneficiary interest in the 111 Belwood Gateway property under a resulting-trust theory at the time of Ms. Will-Darnall's fraudulent conduct.

Ms. Will alleges that at the time of Ms. Will-Darnall's fraudulent conduct in May 2020, Ms. Will held a resulting trust over the 111 Belwood Gateway property. Even though Ms. Will-Darnall held title to the Belwood property until she gave Ms. Will a quitclaim deed in June 2020, Ms. Will contends that her conduct in buying out Ms. Darnall's share of the property in 2017 and extinguishing the mortgage in 2018 "was not a gift to her daughter Ms. Will-Darnall, who paid rent to Ms. Will," but was instead intended to create a trust in which Ms. Will-Darnall held the property, as trustee, for Ms. Will, as beneficiary. Amended Petition at 13. Ms. Will points to Ms. Will-Darnall's 2020 quitclaim deed to Ms. Will as evidence "consistent with" a resulting trust arrangement wherein Ms. Will-Darnall would "eventually convey [that property] to the owner," Ms. Will. Amended Petition at 13 (citing *Estate of Yool*, 151 Cal. App. 4th 867, 874 (2007)).

A resulting trust, "like an express trust, is based on the manifestation of intention of the person creating it." *Majewsky v. Empire Constr. Co., Ltd.*, 2 Cal. 3d 478, 485 (1970). "A resulting trust is not founded on the simple fact that money or property of one has been used by another to purchase property." *Id.* (cleaned up). Instead, a resulting trust is "founded on a relationship between the two, on the fact that as between them, consciously and intentionally, one has advanced the consideration wherewith to make a purchase in the name of the other." *Id.* A resulting trust exists when the "natural presumption" is that the parties "inten[ded] that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired." *Id.* (cleaned up). California law "strong[ly] presume[es]," unless clear and convincing evidence shows otherwise, that the party who holds legal title to property "owns the full beneficial

interest in the property." *In re Schechtman's Est.*, 162 Cal. App. 2d 365, 369 (1958); *see also* Cal. Evid. Code § 662. Additionally, when a parent purchases property on behalf of their child, California courts presume that the purchase is a gift and does not create a resulting trust absent an indication to the contrary. *See In re Schechtman's Est.*, 162 Cal. App. 2d at 369; *Altramano v. Swan*, 20 Cal. 2d 622, 628 (1942).

Here, Ms. Will has not pleaded facts suggesting that she and Ms. Will-Darnall intended that Ms. Will-Darnall would "acquire and hold the property for [Ms. Will]" as Ms. Will's trustee. *Majewsky*, 2 Cal. 3d at 485. Instead, the facts she has pleaded are suggestive of an intent that Ms. Will-Darnall would be the owner of the property. Ms. Will never contends that she lived at 111 Belwood Gateway, and Ms. Will-Darnall has lived at 111 Belwood Gateway since approximately 2012. In addition, Ms. Will-Darnall took title to the property from her now-ex-wife and represented that the property was solely her own in a 2017 marital settlement filing in Santa Clara County Superior Court. *See* Dkt. No. 104-6, Exh. D, at *5–6 ("Cassie [Will-Darnall] is awarded the real property located at 111 Belwood Gateway, Los Gatos, CA 95032, and shall be solely responsible for any and all debts, encumbrances and liens of any kind associated with said property."). And multiple checks from Ms. Will-Darnall to Ms. Will indicate in their memo lines that their purpose was to make mortgage payments on the 111 Belwood property. *See* Dkt. No. 104-7, Exh. E.

The mere fact that Ms. Will's money was used by Ms. Will-Darnall to purchase Sheri Darnall's share of the Belwood property in 2017 and then extinguish the mortgage on the property in 2018 does not establish the creation of a resulting trust. As noted already, California law creates a "strong presumption that the holder of the legal title owns the full beneficial interest in the property," and that a "parent's purchase of property in the name of [her] child … is presumptively a gift or an advancement." *In re Schechtman's Est.*, 162 Cal. App. 2d at 369.

To overcome this presumption, Ms. Will must at least allege that she and Ms. Will-Darnall intended, at the time of the 2017 and 2018 payments, for Ms. Will-Darnall to hold the property for Ms. Will. But Ms. Will does not allege that anywhere in her petition, and instead only vaguely alleges that her "purchase was not a gift to her daughter Ms. Will-Darnall, who paid rent to Ms.

Will." Amended Petition at 13. In the absence of any allegations regarding the parties' shared understanding, Ms. Will has not adequately pleaded the existence of a resulting trust.

Ms. Will-Darnall's 2020 quitclaim deed to Ms. Will likewise does not establish that the two had created a resulting trust several years earlier. Amended Petition at 13 (citing *Estate of Yool*, 151 Cal. App. 4th 867, 874 (2007)).[2] As mentioned, whether a resulting trust exists depends on the parties' manifested intention at the time of the relevant property transactions. Given that the quitclaim deed was executed in 2020, several years after those transactions (and after the fraudulent conduct by Ms. Will-Darnall), and that Ms. Will does not make any allegations regarding the parties' manifested intent in 2017 and 2018, the 2020 deed cannot on its own establish the existence of a resulting trust.

**III. Forfeiture of 111 Belwood Gateway does not violate the Eighth Amendment.**

Ms. Will separately argues that forfeiting her interest in the 111 Belwood Gateway property would violate the Eighth Amendment's prohibition on excessive fines.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The Ninth Circuit has identified four factors for determining whether a forfeiture is disproportionate: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004).

Even assuming that Ms. Will has standing to challenge the government's request for up to $746,372.98 from the Belwood property (which is unclear), such a forfeiture would not violate the Eighth Amendment's prohibition on excessive fines. The "nature and extent of the crime" favors

[2] 21 U.S.C. § 853(n)(6)(A) provides that third-party claimants such as Ms. Will must show a superior interest to the defendant's "at the time of the commission of the acts which gave rise to the forfeiture of the property…." Because the 2020 quitclaim deed was signed after Ms. Will-Darnall's unlawful conduct, the deed could at most be used as after-the-fact evidence of Ms. Will and Ms. Will-Darnall's intention to create a resulting trust in 2018.

United States District Court
Northern District of California

the forfeiture request. *Id.* Ms. Will-Darnall pleaded guilty to fraudulently receiving $2,833,554. Amended Petition at 6. Ms. Will does not contest that Ms. Will-Darnell used the fraudulently obtained loans to write a check to Ms. Will for $971,504.21. Amended Petition at 6. Ms. Will then paid off her loan to Bank of America which included $746,372.98 traceable to Ms. Will-Darnall's first count of bank fraud. *Id.* Thus, Ms. Will-Darnall committed a violation greater than the amount government seeks to recover from the Belwood property. Though Ms. Will-Darnall's violation was not "related to other illegal activities," *$100,348.00*, 354 F.3d at 1122, the "other penalties that may [have] be[en] imposed for th[ese] violation[s]," *id.*, include a fine of up to twice Ms. Will-Darnall's pecuniary gain, *see* 18 U.S.C. § 3571(d). Finally, "the extent of the harm caused" does not suggest that forfeiture is disproportional because, if the extent of harm is measured as the amount Ms. Will-Darnall was able to obtain from the government fraudulently, the harm is $2,833,554. *Id.* The government seeks to recover up to $746,372.98 from the Belwood property as the amount traceable to Ms. Will-Darnall's conduct. *See* Motion to Dismiss at 12. The *Bajakajian* factors favor the United States, and forfeiture of the 111 Belwood Gateway property is not "grossly disproportional to the gravity of" Ms. Will-Darnall's offense, 524 U.S. at 334, nor an "impermissible 'double recovery,'" *United States v Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011).[3]

**CONCLUSION**

For the above reasons, the Court dismisses Ms. Will's amended petition and will enter a final order of forfeiture for:

1. Up to $746,372.98 in equity resulting from the sale of the 111 Belwood Gateway property.
2. A money judgment of $1,406,594.56 from Ms. Will-Darnall.

[3] Ms. Will argues that the Supreme Court's decision in *Ellingburg v. United States*, 607 U.S. 163 (2026), abrogated *United States v. Newman*, 659 F.3d 1235 (9th Cir. 2011). In the Ninth Circuit, a district court must follow intervening Supreme Court authority when that authority is "clearly irreconcilable with [] prior circuit authority." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). But *Ellingburg* is not "clearly irreconcilable," *id.*, with *Newman* because, as Ms. Will acknowledges and the United States emphasizes, *Ellingburg* held only that "Restitution under the [Mandatory Victims Restitution Act of 1996] is plainly criminal punishment for purposes of the Ex Post Facto Clause." 607 U.S. at 166. The Court did not address the application of any other constitutional provision such as the Eighth Amendment.

3. All funds up to $625,952.60 on deposit in a Vanguard account ending in 6846, and all interest accrued since seizure of those funds.

**IT IS SO ORDERED.**

Dated: July 31, 2026

P. Casey Pitts
United States District Judge